UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-CV-80759-DSL

TODD WEST,

    Plaintiff,

vs.

JUSHI HOLDINGS, INC. *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF No. 32]

On September 12, 2025, Plaintiff, Todd West, filed an Amended Complaint against Defendants Jushi Holdings, Inc.; JMGT, LLC; James Cacioppo; and Toya Bellamy-Lockhart (together, "Defendants") asserting claims arising from his employment being terminated. ECF No. 25. The District Court referred this matter to me for a Report and Recommendation. ECF No. 38. I have reviewed the Complaint (ECF No. 1), Amended Complaint (ECF No. 25), the Plaintiff's Motion to Dismiss (ECF No. 32), Defendants' Response (ECF No. 36), and the Plaintiff's Reply (ECF No. 37). This matter is ripe for decision. For the reasons stated herein, I recommend that the District Court **GRANT** in part and **DENY** in part the Motion to Dismiss.

## I.    FACTS

Mr. West was hired on April 12, 2024 as the Chief Operating Officer of JGMT, LLC, a subsidiary of Jushi Holdings, Inc. (together, "Jushi"). ECF No. 25 ¶¶1, 2; ECF No. 1-3 at 2.[1] His Employment Agreement contained provisions for termination with and without cause. ECF No. 1-3. While he was employed, Mr. West was alerted to safety concerns regarding the Nevada, Pennsylvania, Ohio, and Virginia facilities. ECF No. 25 ¶¶22, 29, 34, 36, 46. He hired consultants for the Nevada, Pennsylvania, and Ohio facilities to review "Jushi's facilities' lab operations, standard operating procedures, equipment and design, productivity, efficiencies, quality, and safety and regulatory compliance." *Id.* ¶¶7, 23, 28, 34. Safety concerns arose including "repeated failures of the $CO_2$ equipment," faulty custom tubing, improper ventilation of an extraction booth, and defective pump gasket and seal. *Id.* ¶¶22, 29, 35, 37. These concerns could result in revocation of licensure, emission of high levels of hazardous gas, "serious risks of leaks and explosions," and death. *Id.* ¶¶22, 30, 32, 37.

As a result, Mr. West decided to shut down the Nevada, Pennsylvania, Ohio, and Virginia facilities to ensure compliance with federal laws, and state fire codes. *Id.* ¶¶35, 39, 41, 42. Upon shutting down the Pennsylvania facility, Mr. West received a call from James Cacioppo, Jushi's Chief Executive Officer and Mr. West's supervisor, stating, "I am not in this business to not make money." *Id.* ¶¶11, 16, 31.

---

[1] Pinpoint citations to the parties' filings refer to the number CM/ECF generates at the top of the page.

Mr. West did not reopen the Ohio, Virginia, Nevada, or Pennsylvania facilities "over the express objections of [Mr.] Cacioppo and other Jushi executives." *See id.* ¶¶26, 35, 42. Thereafter, on November 20, 2024, Toya Bellamy-Lockhart, Senior Vice President of Human Resources at Jushi, received an email from Michelle Mosier, Chief Financial Officer at Jushi, raising concerns about Mr. West's performance. *Id.* ¶¶12, 44.

On December 20, 2024, Mr. West received an email from Mr. Cacioppo, copying Ms. Bellamy-Lockhart, with a letter discussing complaints about Mr. West's performance. *Id.* ¶46. The letter stated that Mr. West had 21 days to improve his performance, otherwise he would be terminated. *Id.* Mr. West responded to the letter on January 3, 2025. *Id.* ¶51. He was terminated on January 5, 2025. *Id.* ¶54. He was employed by Jushi for approximately 9 months. *Compare id.* ¶2, *with id.* ¶54.

Thereafter, on June 17, 2025, Mr. West filed his Complaint. ECF No. 1. On September 12, 2025, Mr. West filed an Amended Complaint, which asserts claims under the Florida Whistleblower Act against Jushi; Illinois Whistleblower Act against Jushi; Breach of Contract against Jushi; Illinois Wage Payment and Collection Act against Defendants; and Retaliatory Discharge against Jushi. ECF No. 25. On October 6, 2025, Defendants filed a Motion to Dismiss on the Florida Whistleblower Act, Illinois Whistleblower Act, Illinois Wage Payment and Collection Act, and Retaliatory Discharge claims. ECF No. 32.

## II.   MOTION TO DISMISS STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted if the plaintiff fails to state a claim for which relief can be granted. According to the federal rules, a claimant must only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pled factual allegations in the complaint, as well as all attachments thereto, and evaluates all plausible inferences derived from those facts in favor of the Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a plaintiff need not state in detail the facts upon which he bases his claim, Rule 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n. 3. In other words, a plaintiff's pleading obligation requires "more than labels and conclusions." *Id.* at 555; *see also Pafumi v. Davidson*, No. 05–61679–CIV, 2007 WL 1729969, at *2 (S.D. Fla. June 14, 2007) (J. Cohn).

## III.   LEGAL BACKGROUND

### A. *Florida Whistleblower Act*

The Florida Whistleblower Act ("FWA") says an employer may not retaliate against an employee because the employee: (1) "disclosed, or threatened to disclose" to a governmental agency a violative "activity, policy, or practice" of the employer so long as the employee "has, in writing, brought the activity, policy, or practice to the

4

attention of a supervisor or the employer" and the employer has had the "reasonable opportunity" to remedy the activity; (2) "provided information to, or testified" regarding an investigation into alleged violation of "law, rule, or regulation"; or (3) "[o]bjected to or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102 (2025). The purpose of the FWA is to "protect private employees who report or refuse to assist employers who violate laws enacted to protect the public." *Rutledge v. SunTrust Bank*, No. 07-12419, 2008 WL 161796, at *2 (11th Cir. Jan 18, 2008) (quoting *Jenkins v. Golf Channel*, 714 So. 2d 558, 563 (Fla. 5th DCA 1998)).

Mr. West asserts a claim under Section 448.102. ECF No. 25 at 16-17. Those claims are analyzed using a "three-part burden shifting framework for retaliation cases under Title VII of the Civil Rights Act of 1964." *McIntyre v. Delhaize Am., Inc.*, 403 F. App'x. 448, 452 (11th Cir. 2010); *see also Butterfield v. Jet Blue Airways Corp.*, No. 20-13473, 2022 WL 291003, at *4 (11th Cir. Feb. 1, 2022) ("retaliation claims under [the FWA] are analyzed in the same manner as Title VII retaliation claims"). The framework requires: "(1) [the plaintiff is] engaged in protected activity; (2) [the plaintiff] suffered an adverse employment action; and (3) there is a causal relation between the two events." *Butterfield*, 2022 WL 291003, at *4. If the plaintiff satisfies the three-part framework, the defendant must "articulate a legitimate reason for the employment action." *McIntyre*, 403 F. App'x. at 450. If the defendant provides a legitimate reason, the plaintiff has the final burden "to show that the reason was merely a pretext." *Id.*

5

For the first part of the burden-shifting framework, protected activity includes "object[ing] to or refus[ing] to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer." *Pinder v. Bahamasair Holdings, Ltd.*, 661 F.Supp.2d 1348, 1351 (S.D. Fla. Oct. 9, 2009) (citing *McIntyre v. Delhaize Am., Inc.*, No. 07-cv-2370-T-30TBM, 2009 WL 1039557, *3 (M.D. Fla. 2009)). Florida's appellate courts are split on whether an employee must show "an actual violation of the law" or merely a "good faith, objectively reasonable belief that [their] activity is protected under the statute." *Lemus v. Jones Lang Lasalle Ams., Inc.*, No. 19-25243-Civ, 2021 U.S. Dist. LEXIS 44029, at *9-10 (S.D. Fla. Mar. 5, 2001).[2] The Florida Supreme Court has not resolved this disagreement. *Butterfield*, 2022 WL 291003, at *4.

Additionally, the so-called Manager Rule can bar an FWA claim. *See Rivera,* 2020 WL 491454, at *3. The Manager Rule requires an employee to be involved in activities outside the scope of their job for it to be protected. *See id.* It says "a management employee . . . [who] disagrees with or opposes the actions of an employer [in the normal course of job performance] does not engage in 'protected activity.'" *Id.*

---

[2] There is disagreement among courts whether there is even a dispute in the controlling law. *Lemus,* 2021 U.S. Dist. LEXIS 44029, at *10. Some courts have found that any apparent disagreement is a nullity because the purported variance is dicta. *See Rivera v. Spirit Airlines, Inc.*, No. 19-62298-Civ, 2020 WL 491454, at *2.

B.  *Illinois Whistleblower Act*

The Illinois Whistleblower Act ("IWA") states that "[a]n employer may not take retaliatory action against an employee for refusing to participate in an activity that the employee has a good faith belief that such participation would result in a violation of the State or federal law, rule, or regulation." 740 ILCS 174/20 (effective January 1, 2025). The Act "protects employees who call attention in one of two specific ways to illegal activities . . . employees who either report the illegal activity to a governmental agency or refuse to participate in the illegal activity." *Rehfield v. Diocese of Joliet*, 182 N.E.3d 123, 133 (Ill. 2021). There are "two aspects to such a claim: (1) the refusal to participate; and (2) the violation of a State or federal law, rule, or regulation." *Perez v. Staples Contract & Commer. LLC*, 31 F.4th 560, 574 (7th Cir. 2022).

> "Refusing to participate" means exactly what it says: a plaintiff who participates in an activity that would result in a violation of a state or federal law, rule, or regulation cannot claim recourse under the Act. Instead, the plaintiff must actually refuse to participate. Black's Law Dictionary defines "refusal" as "[t]he denial or rejection of something offered or demanded." Indeed, the very title of section 20, "Retaliation for certain refusals prohibited," suggests that not every refusal qualifies for protection under the Act. Furthermore, the Act protects employees who complain to a government agency about an activity that the employee reasonably believes constitutes a violation of a state or federal law, rule, or regulation. Thus, "refusing" means refusing; it does not mean "complaining" or "questioning," as Sardiga would have us believe.

*Sardiga v. Northern Trust Co.*, 948 N.E.2d 652, 657 (Ill. App. 1st Dist. 2011) (citations omitted).

*C.  Illinois Wage Payment and Collection Act*

The Illinois Wage Payment and Collection Act ("IWPCA") gives employees a "cause of action against employers for the timely and complete payment of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 566 (7th Cir. 2016). "To state a claim under the [IWPCA], a plaintiff must plead that: (1) he had an employment agreement with the employer that required the payment of wages or final compensation; and, (2) that defendants were employers under the [IWPCA]." *Watts v. ADDO Mgmt.*, L.L.C., 97 N.E.3d 75, 80 (Ill. App. 1st Dist. 2018). The IWPCA "provides no substantive relief beyond what the underlying employment contract requires." *Enger*, 812 F.3d at 570. To afford relief beyond the employment agreement would "turn the IWPCA on its head." *Id.*

Final compensation is defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 20 ILCS 115/2 (effective January 1, 2025). Wages are defined under the IWPCA as "any compensation owed [to] an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation." *Id.*

While the term "earned bonuses" is not defined, Illinois courts "analogize them to 'earned vacation.'" *Hess v. Bresney*, 784 F.3d 1154, 1162 (7th Cir. 2015). Accordingly, "[w]here there is an unequivocal promise that a bonus will be paid, at

8

least one court has awarded a pro rata share of that bonus to the terminated employee

. . . [w]here, by contrast, there is no unequivocal promise that a bonus will be paid,

three courts have denied recovery under the IWPCA." *Id.* This interpretation is

aligned with the Illinois Department of Labor's definition of the term "earned

bonuses":

> An employee has a right to an earned bonus when there is an
> unequivocal promise by the employer and the employee has performed
> the requirements set forth in the bonus agreement between the parties
> and all of the required conditions for receiving the bonus set forth in the
> bonus agreement have been met.

56 Ill. Adm. Code § 300.500 (2014). This consistent interpretation is given

"substantial weight and deference." *Hess*, 784 F.3d at 1162 (quoting *McLaughlin v.*

*Sternberg Lanterns, Inc.*, 917 N.E.2d 1065, 1071 (Ill. App. Ct. 2d. Dist. Oct. 16, 2009));

*Ill. Consolidated Tele. Co. v. Ill. Com. Comm'n*, 447 N.E.2d 295, 300 (Ill. 1983) ("courts

will give substantial weight and deference to an interpretation of an ambiguous

statute by the agency charged with the administration and enforcement of the

statute" because "courts appreciate that agencies can make informed judgments upon

the issues, based upon their experience and expertise.").

Further, under Illinois law, "any officers of a corporation or agents of an

employer who knowingly permit such employer to violate the provisions of [the

IWPCA to] be deemed to be the employers of the employees in the corporation." 820

ILCS 115/13 (effective January 1, 2011). This section "imposes personal liability on

officers or agents who knowingly permitted [a violation of the IWPCA]" as decision

makers, which excludes merely supervisory employees. *Andrews v. Kowa Printing*

*Corp.*, 838 N.E.2d 894, 899-900 (Ill. 2005). The term "knowingly permit" has been construed by Illinois courts to include advising, consenting, affecting, and consulting in the decision. *Zwick v. Inteliquent, Inc.*, 83 F. Supp. 3d 804, 812 (N.D. Ill. 2015).

Moreover, in addition to in-state executives, "the [Illinois Department of Labor] will exercise personal jurisdiction over a nonresident individual when the person is an officer, director or agent of a corporation organized under Illinois law having a principal place of business or presence in the State and when there are sufficient contacts with the state." 56 Ill. Adm. Code § 300.440(e). Caselaw clarifies that the IWPCA cannot be brought against out-of-state employers. *DeGeer v. Gilis*, 707 F.Supp. 2d 784, 799-800 (N.D. Ill. 2010) ("Several courts have entertained this argument and have consistently rejected it"); *see also Khan v. Van Remmen, Inc.*, 756 N.E.2d 902, 913 (Ill. App. Ct. 1st Dist. Sept. 18, 2001) (holding that "the [IWPCA] applies only to Illinois employees and Illinois employers"); *Glass v. Kemper Corp.*, 920 F.Supp. 928, 932 (N.D. Ill. 1996) ("the court finds that the language of the [IWPCA] indicates that the act is intended to apply only to Illinois employees working for Illinois employers").

### D. Retaliatory Discharge

Illinois common law permits a cause of action for retaliatory discharge. *Hillman v. City of Chi.*, 834 F.3d 787, 793 (7th Cir. 2016). It is considered a "narrow" and "limited" exception to at-will employment. *Id.* The requirements to succeed on a claim for retaliatory discharge are: "(1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities (causation), and (3) the

discharge violates a clear mandate of public policy." *Akins v. Appraisal Inst.*, No. 25 CV 3341, 2025 WL 1899515, at *3 (N.D. Ill. July 9, 2025) (quoting *Michael v. Precision All. Grp.*, LLC, 21 N.E.3d 1183, 1188 (Ill. 2014)). The plaintiff has the burden to prove all elements. *Michael*, 21 N.E.3d at 1189.

First, the employer must terminate the employee. *Id.* The Illinois Supreme Court "strongly discourages" expansion of retaliatory discharge claims to include constructive discharge. *Seddon v. Maytag Corp.*, No. 05-3861, 2006 WL 1096651, at *2 (7th Cir. Apr. 26, 2006).

Second, causation centers on "the employer's motive in discharging the employee." *Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 730 (Ill. 1992). The employee "must affirmatively show that the discharge was primarily in retaliation for [the plaintiff's] exercise of a protected right." *Phillips v. Cont'l Tire the Ams., LLC*, 743 F.3d 475, 477 (7th Cir. 2014). The employer is not required to provide a basis for termination, but may offer a reason. *Michael*, 21 N.E.3d at 1189. Merely because an employer provides a reason for the termination does not mean the retaliatory discharge claim is defeated. *Id.* But, when an employer offers a non-pretextual reason that the court believes, the causation element is not met. *Id.*

Third, there is no precise definition for what is considered public policy. *Akins*, 2025 WL 1899515, at *8-9. Generally, public policy can be described as "concern[ing] what is right and just and what affects the citizens of the State collectively." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009) (quoting *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981)). "The cause of action is allowed where

11

the public policy is clear, but is denied where it is equally clear that only private interests are at stake." *Palmateer*, 421 N.E.2d at 879. The "matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Turner*, 911 N.E.2d at 374 (quoting *Palmateer*, 421 N.E.2d at 878-79). Still, where "the nature of the interests [ ] at stake [are] muddled, the courts have given conflicting answers as to whether the protection of the tort action is available." *Palmateer*, 421 N.E.2d at 879.  Notably, "a review of Illinois case law reveals that retaliatory discharge actions have been allowed . . . where an employee is discharged in retaliation for" whistleblowing. *Akins,* 2025 WL 1899515, at *8-9; *see also Michael*, 21 N.E.3d at 1188.

## IV.    DISCUSSION

### A.  Florida Whisleblower Act (Count I)

Jushi says Mr. West's FWA claim is barred by the Manager Rule. ECF No. 32 at 4-6. As well, Jushi states that Mr. West did not engage in protected activity under the statute because he was at all times acting in his official capacity as Chief Operating Officer. *Id.* at 3. Jushi also says "none of the alleged safety issues that [Mr. West] brought to Jushi's attention violated any applicable law, rule, or regulation." *Id.* Mr. West responds that (1) the Manager Rule is inapplicable to the FWA, (2) the FWA does not require an actual violation at the pleading stage, and (3) he suffered an adverse action from the protected activity. ECF No. 36 at 4-8.

1. <u>The Manager Rule</u>

Jushi says that an employee performing their normal job duties does not engage in protected activity and cannot recover under the FWA pursuant to the Manager Rule. ECF No. 32 at 4. The Manager Rule can prohibit recovery when a management employee engages in otherwise-protected activity that is not beyond the scope of their normal job function. *Brush v. Sears Holdings Corp.*, 466 F. App'x. 781, 786-89 (11th Cir. 2012) ("to qualify as 'protected activity' [under the Manager Rule,] an employee must cross the line from being an employee 'performing [their] job . . . to an employee lodging a personal complaint.").

Jushi cites one unpublished Eleventh Circuit decision, *Brush*, as support for its position. ECF No. 32 at 4. The case stems from a Title VII sexual harassment claim where the plaintiff acted as an internal investigator of the claim who allegedly violated her employer's investigation procedures and was subsequently terminated. *Brush*, 466 F. App'x. at 783, 786-89 (11th Cir. 2012). The court found that "the 'manager rule' [is] persuasive and a viable prohibition against certain individuals recovering under Title VII" reasoning that the plaintiff only acted as a manager and did not assert any rights by taking "any action adverse to the company during the investigation." *Id.* at 787.

A later Eleventh Circuit opinion limits the precedential value of the *Brush*. In *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1346 (11th Cir. 2022), the Eleventh Circuit noted, "our unpublished opinions are not precedential, so they do not bind us or district courts to any degree." The *Patterson* Court further noted that the Manager

Rule derived from the text of the Fair Labor Standards Act, and questioned whether the Manager Rule applies to Title VII retaliation claims. *See id.* at 1346-47.

Additionally, *Brush* is factually distinguishable from Mr. West's case. *Brush* was decided at a summary judgment stage. *Brush*, 466 F. App'x. at 788. The plaintiff had not accused the employer of violating any law. *Id.* at 787-88 ("[d]isagreement with internal procedures does not equate to 'protected activity'"). As a result, the court held that the plaintiff could not assert that she engaged in protected activity. *Id.* at 786.

Accordingly, I find that Mr. West's Amended Complaint has plausibly pled that the Manager Rule does not bar his FWA claim. Jushi may reassert this argument at the summary judgment stage. *See Goodwin v. Dyncorp Int'l LLC*, No. 3:14-cv-116/RV-EMT, 2015 U.S. Dist. LEXIS 195897, at *12-14 (N.D. Fla. Mar. 30, 2015) (rejecting the Manager Rule for the motion to dismiss, but granting it at summary judgment).

2. <u>Violation of a Law, Rule or Regulation</u>

Jushi says that Mr. West only broadly identified violations of OSHA or vague "good faith belief" assertions that there would be a violation of a law, which is not enough to support a FWA claim. ECF No. 32 at 7. Mr. West responds that he has adequately pled violations of the law, regardless of whether the actual violation or reasonable belief standard applies. ECF No. 36 at 6-7.

Mr. West's Amended Complaint includes claims that he "shut down the facility in order to comply with state and federal safety laws, including but not limited to the OSH Act and its implementing regulations, as well as state fire code laws." ECF No.

14

25 ¶¶25, 28, 32, 37, 39, 40, 42. His actions were undertaken to comply with OSHA, and his "refusals were based on ongoing violations of 29 U.S.C. § 654(a)(1), 29 C.F.R §§ 1910.106 and 1910.169, and the state fire codes of Nevada, Pennsylvania, Ohio, and Virginia." *Id.* ¶16. The Amended Complaint states that there was the potential for "serious injury to persons in the facility," and a finding of "improper ventilation and high levels of hazardous gas." *Id.* ¶22, 29. As well, the Amended Complaint cites the Code of Federal Regulations, which "cover[s] the handling, storage, and use of flammable and combustible liquids" and "standards for pressurized air systems." *Id.* ¶39 n.2,3. Therefore, regardless of whether the actual violation or good faith standard is applied, Mr. West has pled facts sufficient to allege that Jushi violated the FWA.

### B. *Illinois Whistleblower Act (Count II)*

Jushi seeks to dismiss Count II because Mr. West did not "abstain from any course of conduct" and his "decisions were not overruled" under the meaning of the statute. ECF No. 32 at 10. Mr. West responds that he did not comply with "direct orders from Jushi leadership to continue operating noncompliant facilities," which "qualify as protected activity under Illinois law." ECF No. 36 at 8.

Refusing to participate in an activity can occur in two ways: contacting a government agency to report unlawful activity or "refusing to participate in an [unlawful] activity." *Sardiga*, 948 N.E.2d at 657. Merely bringing unlawful activity to a superior within the company is not enough to support a refusal to participate. *Id.* at 657 ("'refusing' does not mean 'complaining.'"); *compare Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 670 (7th Cir. 2008) (stating plaintiff's actions did not rise to

15

a refusal to participate where there is no evidence that plaintiff refused to engage in the activity), *with Spratt v. Bellwood Pub. Library*, 380 F.Supp. 3d 783, 790 (N.D. Ill. 2019) (refusing to pay invoices improperly obtained through methods in violation of Illinois Municipal Code is considered refusal to participate).

In his Amended Complaint, Mr. West states that the Nevada, Pennsylvania, Ohio, and Virginia facilities were experiencing safety concerns. *See* ECF No. 25 ¶40. The safety concerns include "repeated failures of the $CO_2$ equipment," faulty custom tubing, improper ventilation of an extraction booth, and defective pump gasket and seal. *Id.* ¶¶22, 29, 35, 36, 37. These issues could result in revocation of licensure, emission of high levels of hazardous gas, "serious risks of leaks and explosions," and death. *Id.* ¶¶22, 30, 32, 37. After individual investigations into the safety of the facilities, Mr. West decided to shut down the facilities to ensure compliance with the federal laws,[3] and state fire code. *Id.* ¶35, 39, 41, 42. Based on his decision to shut down the facilities, Mr. West received pushback from management, including Mr. Cacioppo. *Id.* ¶¶31, 35, 37, 42. Nonetheless, Mr. West refused to reopen the Nevada, Pennsylvania, Ohio, and Virginia facilities. *See id.* ¶¶26, 35, 40, 42.

Therefore, viewed in the light most favorable to Mr. West, the Amended Complaint has pled sufficient facts to plausibly allege that he refused Mr. Cacioppo's

---

[3] Mr. West includes references to OSHA requirements that cover "the handling, storage, and use of flammable and combustible liquids" and "standards for pressurized air systems." ECF No. 25 at 11 n. 2-3.

instruction to continue operating plants that were violating state and federal safety laws.

### C. *Illinois Wage Payment And Collection Act (Count III)*

Jushi says that (1) Mr. West did not satisfy the requirement of "refusing to participate" under the statutory language, (2) his $200,000 bonus was not earned, and (3) his $400,000 severance is not an entitlement. ECF No. 32 at 9-15. Mr. West responds that his bonus and severance fall within the IWPCA's definition of "final compensation" because they are an "earned bonus" and "any other compensation owed by the employer pursuant to an employment contract or agreement." ECF No. 36 at 11.

#### 1. Refusing to Participate

As discussed above, Mr. West has plausibly alleged that he refused to participate in ongoing violations of federal and state safety laws.

#### 2. Bonus Payment

Jushi states that the $200,000 bonus was not earned because Mr. West did not meet the requirements of his Employment Agreement to receive payment. ECF No. 32 at 11. Mr. West replies that the bonus was an earned bonus because he was terminated pretextually without cause. ECF No. 36 at 11-12. Additionally, Mr. West says he was "*guaranteed* a $200,000 annual bonus . . . if he was terminated without cause" and that he is "at the very least entitled to a pro-rated portion of all incentive pay, including his bonus." *Id.* (emphasis added).

Mr. West's Employment Agreement states that "[Mr. West's] first year bonus of Two Hundred Thousand and No/100 Dollars ($200,000.00) is guaranteed if [Mr. West] remains employed with the Company as Chief Operating Officer for one (1) year and is employed by the Company when such a bonus is paid." ECF No. 1-3 at 3. As well, it says, "[t]hereafter, [Mr. West] shall be eligible to earn a performance bonus pursuant to the Company's annual short-term incentive program." *Id.*

The language of the Employment Agreement is clear. The terms of the Employment Agreement say that Mr. West needed to be employed for 12 months in order to qualify for his bonus. He was only employed for 9 months. But, Illinois courts say that "[a] party to a contract may not complain of the nonperformance of the other party where that performance is prevented by his own actions." *Barrows v. Maco, Inc.*, 419 N.E.2d 634, 639 (Ill. App. Ct. 1st Dist. Apr. 6, 1981); *Eggan v. Simonds*, 181 N.E.2d 354, 356 (Ill. App. Ct. 1st Dist. Jan. 30, 1962) ("A party cannot take advantage of a condition precedent the performance of which he has rendered impossible"); *Golden Bear Family Restaurants, Inc. v. Murray*, 494 N.E.2d 581, 589 (Ill. App. Ct. 1st Dist. May 15, 1986) ("a party to a contract may not take advantage of a condition precedent the performance of which he has rendered impossible" regarding compensation for *pro rata* vacation pay).

Here, Mr. West was terminated by Jushi. Mr. West has plausibly alleged that his termination was pretextual and unlawful. If so, Jushi's own conduct precluded Mr. West from being able to fulfill the 12-month employment requirement to earn his

bonus. Therefore, Mr. West has plausibly alleged entitlement to his full bonus under the law of Illinois. As a result, Mr. West's claim for Count III should not be dismissed.

### 3. Severance Payment

Jushi states that Mr. West was terminated for cause, so he is not entitled to severance under the Employment Agreement. ECF No. 32 at 14. Alternatively, the $400,000 severance payment was not an entitlement because it was not part of his "final compensation." *Id.* at 13-14. Jushi also states that Mr. West did not meet the requirements to be eligible for an entitlement. *Id.* Mr. West replies that he was pretextually terminated to avoid payment. ECF No. 36 at 11. Additionally, he says that the severance was earned and he is "at the very least entitled to a pro-rated portion of all incentive pay." *Id.*

Mr. West's Employment Agreement has a section for termination without cause that requires compensation of "twelve (12) months of the Executive's Base Salary over a 12-month period in installments based on the Company's regular payroll schedule" *only if* "[Mr. West] executes a general release of all claims ("Release") in a form prescribed by the Company and such Release becomes final, finding and irrevocable no more than 55 days after [Mr. West's] termination of employment." ECF No. 1-3 at 4. However, "[Mr. West] is not eligible for the Severance Payment or Equity Acceleration if he resigns or is terminated for Cause." *Id.* at 4-5.

Initially, Mr. West has plausibly alleged that Jushi's conduct — pretextually firing him for cause — prevented him from satisfying the requirements for a severance payment under the Employment Agreement.

19

Next, under Illinois caselaw, "'final compensation' includes severance but excludes . . . unpaid future wages." *Swift v. DeliverCareRx, Inc.*, No. 14 C 03974, 2015 WL 3897046, at *6 (N.D. Ill. June 23, 2015); *see Elsener v. Brown*, 996 N.E.2d 84 (Ill. App. Ct. 2d Dist. Sept. 10, 2013) (implicitly holding that severance is part of final compensation in reference to a vicarious liability claim). Severance "is a payment that an employee is entitled to be paid upon separation from employment pursuant to an agreement between the parties or established practice of the employer." Ill. Adm. Code § 300.530. "Unpaid future wages . . . are the wages the employee would have received had the contract gone forward." *Swift*, 2015 WL 3897046, at *6. .

Here, the Employment Agreement contained severance. Notably, the 12-month payment is labeled as a "Severance Payment" in the Employment Agreement, and it is a part of the contract that was bargained for by the parties as part of Mr. West's executive compensation should Mr. West be terminated without cause. ECF No. 1-3 at 4. As Illinois courts have held that final compensation includes severance, I reject Defendant's argument that the severance payment is not an entitlement.

For all of these reasons, I find that Count III plausibly alleges a claim under the IWPCA for the $400,000 severance payment.

4. <u>Liability of Individual Defendants Mr. Cacioppo and Ms. Bellamy-Lockhart</u>

Mr. Cacioppo and Ms. Bellamy-Lockhart say that Mr. West has not alleged that they are Illinois citizens, which is required for them to be personally liable. ECF No. 32 at 16. Further, they argue that they are not parties to the Employment Agreement, so they should not personally be named in the action. *Id.* at 17. Finally,

20

they say the facts alleged in the Amended Complaint do not support individual liability. *Id.* at 16. Mr. West responds that personal jurisdiction is sufficient and that they "personally participated in the decision to deny Mr. West's earned wages and benefits," which is enough to plead their liability. ECF No. 36 at 12.

First, while Mr. West states that "[t]he Jushi Defendants, Mr. Cacioppo, and Ms. Bellamy-Lockhart were at all times relevant 'employers' under the IWPCA," Mr. West has not pled facts showing that Ms. Bellamy Lockhart or Mr. Cacioppo are Illinois citizens. ECF No. 25 ¶73. Under Illinois law, the IWPCA is only enforceable against individual Illinois defendants. *Glass,* 920 F. Supp. at 931; *Porter v. Time4media, Inc.,* No. 05 C 2470, 2006 WL 3095750, at *6 (N.D. Ill. Oct. 30, 2006) (dismissing counts under the IWPCA for two out-of-state executives). Thus, I find that Mr. West has not pled sufficient facts to sustain a claim under the IWPCA against Mr. Cacioppo and Ms. Bellamy-Lockhart because it is unclear whether they are Illinois citizens.

Because I cannot rule out that Mr. West could amend his complaint to correct the deficient citizenship pleading, I will address Ms. Bellamy-Lockhart and Mr. Cacioppo's remaining arguments.

Second, Ms. Bellamy-Lockhart and Mr. Cacioppo say that the facts as alleged in the Amended Complaint do not support their individual liability due to "conclusory allegations that [Mr.] Cacioppo and [Ms.] Bellamy-Lockhart 'permitted' Jushi not to pay Plaintiff his final compensation." ECF No. 32 at 16-18. In response, Mr. West says that the Amended Complaint adequately shows that they "personally

21

participated in the decision to deny Mr. West's earned wages and benefits." ECF No. 36 at 12.

In *Zwick*, the court found that the plaintiff adequately pled that the Senior Vice-President and General Counsel ("SVP/GC"), and Senior Vice-President of Litigation, Regulatory and Human Resources ("SVP of HR") knowingly participated in the decision to terminate the plaintiff. 83 F.Supp.3d at 806, 810-11. Their knowledge included allegations of providing a "significant" and "central role" in "participat[ing] in" and "execut[ing]" the decision to terminate the plaintiff based on their status as officers of the organization; and handling the termination discussions with the plaintiff, which included the time when severance was offered. *Id.* at. 810. The court reasoned that "[t]hese allegations are entirely plausible in light of (1) [the plaintiff's] additional allegation that [SVP of HR] 'had direct responsibility for human resources functions, including but not limited to the final pay of departing executives such as [the plaintiff]" and "(2) [SVP/GC] position as general counsel. These allegations are sufficient to state a claim that [the executives] were 'decision makers' regarding how much to pay [the plaintiff] upon his termination." *Id.* (citations omitted). Thus, the court found that the officers knowingly participated in the decision to terminate and pay the plaintiff. *Id. See also Ziccarelli v. Phillips*, No. 12 CV 9602, 2013 WL 5387864, at *12 (N.D. Ill. Sept. 25, 2013) (finding that "threadbare" and conclusory allegations provided in the complaint are enough when coupled with the additional information provided in the plaintiff's brief, including the

position of the officer and that the officer was required to approve the actions of other employees).

Conversely, in *Cullotta v. United Surgical Partners Int'l, Inc.*, the court dismissed the complaint because it did not plead sufficient facts that the defendants "knew of and permitted [defendant company] to issue [the plaintiff] a final paycheck that did not include compensation for his accrued paid time off." No. 19-cv-06490, 2021 U.S. Dist. LEXIS 144946, at *26 (N.D. Ill. Aug. 3, 2021). The plaintiff only stated that the defendants "offered [the plaintiff] a severance agreement that the [p]laintiff declined to sign." *Id.* As a result, the court did not find that the individual defendants "consented to or otherwise participated in the decision to exclude" the plaintiff's payments in his final paycheck. *Id.* at *26-27.

Here, the Amended Complaint says that Mr. Cacioppo indicated a preference "to work with human resources" rather than speak with Mr. West directly about their working relationship. ECF No. 25 ¶38. Ms. Bellamy-Lockhart received an email from Ms. Mosier regarding Mr. West's performance concerns and "Ms. Bellamy-Lockhart, as the Senior Vice President of Human Resources of the Jushi Defendants, knowingly permitted the Jushi Defendants not to pay Mr. West's earned compensation." *Id.* ¶44, 80. Subsequently, Mr. Cacioppo sent the 21-day notice letter on December 20, 2024, copying Ms. Bellamy-Lockhart, regarding Mr. West's inadequate performance. *Id.* ¶46. Additionally, the Amended Complaint provides conclusory statements, such as "Jushi management, particularly Mr. Cacioppo and Ms. Bellamy-Lockhart . . . teamed up to retaliate against Mr. West for raising these concerns. Specifically, Defendants

manufactured a for-cause termination to remove Mr. West and deny him [payments and options] to which he was entitled [if terminated after one year]" and "[Mr.] Cacioppo became intent on pushing Mr. West out of the business." ECF No. 25 ¶¶8, 32.

Mr. West's facts contrast *Cullotta,* where the severance payment was offered without additional facts to suggest knowledge of the payment. Here, Mr. West alleges that Ms. Bellamy-Lockhart and Mr. Cacioppo had knowledge surrounding the facts of his termination and actively participated in his termination. *Id.* ¶¶38, 42, 44, 46.

The Amended Complaint more closely resembles the facts pled in *Zwick* and *Ziccarelli.* Mr. Cacioppo's comment to Mr. West implied that he would handle Mr. West's performance through human resources, which is the context provided in *Zwick.* As well, Ms. Bellamy-Lockhart was copied on the relevant emails discussing Mr. West's unsatisfactory performance, and the Amended Complaint implies that Ms. Bellamy-Lockhart—based on her position in human resources—acted as a decision maker in terminating Mr. West. This information parallels the facts provided in *Zwick* that human resources would be at the center of the termination actions, which is where Ms. Bellamy-Lockhart fell by being copied on the performance emails. Further, Mr. Cacioppo directly sent the 21-day notice letter to Mr. West. ECF No. 25 ¶46. As his direct supervisor, Mr. Cacioppo would be involved in his termination, as in *Ziccarelli. Id.* ¶16.

24

Thus, viewing the Amended Complaint in the light most favorable to Mr. West, there are sufficient facts to plausibly allege the individual liability of Ms. Bellamy-Lockhart and Mr. Cacioppo under Illinois law.

### D. Retaliatory Discharge (Count V)

Jushi says that Mr. West has not met the burden to plead that he engaged in protected activity and the discharge violated public policy. ECF No. 32 at 19. Mr. West responds that he has pled the required elements. ECF No. 36 at 15.

#### 1. Protected Activity

Jushi explains that Mr. West has not sufficiently pled the second element of his retaliatory discharge claim: there was retaliation for the employee's activities. ECF No. 32 at 18. To support their arguments, Jushi references their arguments above under Count I under the FWA and Count II under the IWA. *See id.*; ECF No. 37 at 10. For the same reasons discussed above, I find those arguments unpersuasive. I find that Mr. West has plausibly pled that he engaged in protected activity.

#### 2. Public Policy Argument

Jushi states that Mr. West has not sufficiently pled the third element of his retaliatory discharge claim: the discharge violated public policy. ECF No. 32 at 19. Mr. West states that his public policy rationale to "[p]rotect[ ] worker safety and enforcing OSHA compliance" and "[p]olicies 'affecting the health and safety of citizens'" are sufficient to survive the Motion to Dismiss. ECF No. 36 at 10.

Since retaliatory discharge is a narrow exception to the at-will employment doctrine, "public policy must be clearly mandated and not simply a broad, general

statement of policy." *DiPietro v. GATX Corp.*, 167 N.E.3d 247, 257 (Ill. App. Ct. 1st Dist. 2020). Notably, "the mere citation of a constitutional or statutory provision in a complaint will not, by itself, be sufficient to state a cause of action for retaliatory discharge. Rather, an employee must show the discharge violated the public policy that the cited provision clearly mandates." *Id.* Courts have found that there is a clearly mandated public policy where the discharge was for whistleblowing. *Michael*, 21 N.E.3d at 1188; *see Akins,* 2025 WL 1899515, at *8-9.

In *Palmateer*, the court stated that "[t]here is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens." 421 N.E.2d at 879-80. In fact, protecting worker safety is a core tenant of public policy. *See Stebbings v. Univ. of Chi.*, 726 N.E.2d 1136, 1143 (Ill. App. Ct. 1st Dist. 2000) ("[I]n our view, it is as contrary to public policy to fire an employee for reporting radiation hazards [in the workplace] as it is to fire an employee for reporting a crime."); *see also DiPietro*, 167 N.E.3d at 257 ("[p]olicies affecting the health and safety of citizens are sufficient to support a retaliatory discharge claim, while policies affecting social and economic regulations are less likely to do so.").

Here, the Amended Complaint alleges that Mr. West was "concerned for the health and safety of employees and for legal compliance" when shutting down certain facilities. ECF No. 25 ¶7. He recognized that certain ongoing violations created "imminent dangers to employee health and safety" that "could result in serious injury or death to persons in the facilities." *Id.* ¶¶40, 93. He scheduled meetings with the Vice President of Operations, Director of Environmental Health and Safety and

Director of Operations to discuss his "serious concerns regarding the extraction lab and regulatory compliance." *Id.* ¶23.[4]

Thus, Mr. West has pled facts sufficient to show that his actions supported the public policy of protecting life and being a whistleblower.

### REPORT AND RECOMMENDATION

Accordingly, I **RECOMMEND** that the District Court GRANT in part and DENY in part the Motion to Dismiss. Specifically, the Motion to Dismiss Counts I, II, III and IV against Jushi should be DENIED and Jushi should be ordered to file an Answer within 10 days. The Motion to Dismiss Count III against Mr. Cacioppo and Ms. Bellamy-Lochart should be GRANTED and Count III should be DISMISSED as to them. This dismissal should be without prejudice to Mr. West seeking leave to file an amended pleading if he believes, consistent with Fed. R. Civ. P. 11, that he can cure the defects noted above. *See* SDFL Local Rule 15.1.

### NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Judge David S. Leibowitz, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to

---

[4] The Amended Complaint also argues that the "[c]learly mandated public policy protected Mr. West's reports and complaints regarding the Jushi Defendants' conduct." ECF No. 25 ¶94. This allegation is not entitled to the assumption of truth because it is a legal argument, not an assertion of fact.

timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at Mr. West Palm Beach, Palm Beach County, in the Southern District of Florida, this 25th day of February 2026.

_____

BRUCE E. REINHART

UNITED STATES MAGISTRATE JUDGE

28